FARMER, Judge.
Attacking his conviction on a number of grounds, defendant primarily argues that the trial judge erroneously allowed pretrial depositions of the principal state witnesses to be adduced as evidence in place of live testimony. He bases his argument for a new trial on the fact that he was not personally present when the depositions were taken. We reverse.
The charges involve burglary with a battery, and aggravated battery, in which two elderly victims were severely beaten. The state moved to preserve the testimony of the two victims shortly after the case began because they were of advanced years, in poor health, living in Connecticut and were unlikely to be able to testify in person at trial. Although defendant was in custody, he was personally served with the motion in open court. His counsel did not object to the fact of taking of the depositions but stated that he did not want his lack of objection to be understood as a consent to use the depositions at trial. Defense counsel emphasized that:
“if the proposed deposition is to be used at trial, I know Mr. Brown has a right to be there and confront his witnesses. So I think it has to be at the jail because he’ll want to be present for any deposition.”
Judge Lebow reminded the state that such a deposition was for all practical purposes indistinguishable from the trial itself and that the deposition could not be used if the defendant was not personally present. The judge instructed the prosecutor that the state would have to make suitable arrangements for the place of the deposition. When the prosecutor expressed concern about having defendant in the same room with the victims, the court pointedly stated: “[y]ou set it up, but it still has to be with him present.” [emphasis supplied.] In spite of this judicial admonition, however, when the depositions were finally taken in Connecticut (about a month before trial began) defendant was not present. His lawyer, too, was not physically present but did question both witnesses by telephone from Florida.
At the start of trial, the prosecutor formally moved for permission to use the depositions of the two victims in evidence instead of live testimony.[1] Counsel objected to the use of the depositions. Defendant personally addressed the court on the matter, making clear his demand for live witnesses subject to cross examination before the jury. Judge Zack granted the state’s motion.[2] Defendant was convicted and sentenced to life in prison.
We, are here concerned solely with the absence of the defendant from the deposition. Rule 3.190(j)(3) states:
“If the deposition is taken on the application of the State, the defendant and the defendant's attorney shall be given reasonable notice of the time and place set for the deposition. The officer having custody of the defendant shall be notified of the time and place and shall produce the defendant at the examination and keep the defendant in the presence of the witness during the examination.” [emphasis supplied]
In Brown v. State, 471 So.2d 6 (Fla.1985), the supreme court was confronted with the same issue. The defendant there did not receive any notice and thus did not attend the deposition. The Broivn court concluded that the State’s failure to comply with the rule governing the taking of depositions to perpetuate testimony on the application of the State, by not giving notice to the defendant and providing for his presence at the deposition, created fundamental error by depriving him of his constitutional right to confront and cross-examine the witnesses against him. Hence the failure of the State to produce the defendant personally at the depositions in this case was clear error.
*816 The question is whether the error is harmless. In State v. Clark, 614 So.2d 453 (Fla. 1992), the court considered whether the harmless error doctrine is applicable to this identical error — the absence of the defendant at a pretrial deposition later adduced in evidence at trial.[3] The court concluded that the harmless error doctrine was applicable to errors of this kind and explained:
“In State v. DiGuilio, 491 So.2d 1129, 1134 (Fla.1986), we stated ‘that constitutional errors, with rare exceptions, are subject to harmless error analysis,’ and adopted the harmless-error test from Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), i.e., ‘the burden [is] on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.’ DiGuilio, 491 So.2d at 1135. The United States Supreme Court has held that violations of the Confrontation Clause are subject to a harmless-error analysis. Coy v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). As stated in Van Arsdall: ‘The harmless -error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant’s guilt or innocence and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.’ 475 U.S. at 681, 106 S.Ct. at 1436 (citation omitted). We agree with this statement and answer the certified question in the affirmative.”
614 So.2d at 454. Thus, although it was clear error in the present case to admit the depositions, we must nevertheless examine the record to ascertain whether the error was harmless.
The burglary took place in the home of the two elderly victims. They admitted a man into their apartment who said he was a maintenance man and needed to use their phone. After dialing a number and purporting to find it busy, he asked to use their bathroom. Later one of the victims saw the man standing near their bedroom and went to investigate. Shortly after that, the other victim heard the first victim scream and called 911, whereupon she was knocked unconscious and awoke later in a hospital. When police first visited her in the hospital, she did not have her glasses and her eyes were swollen. She could not make an identification. A few days later, she was given her glasses and positively identified defendant as the perpetrator. Defendant’s fingerprints were found on a jewelry box in the bedroom of the victims. Police obtained an arrest warrant. After apprehending defendant at an apartment he occupied with a female companion, police found a quantity of jewelry. The victims later identified several of the pieces found in defendant’s apartment as items stolen during the burglary. Only one of the two victims positively identified defendant.
In analyzing whether this identical error was harmless, in Clark the court reasoned as follows:
“Whether an error is harmless ‘depends upon a host of factors,’ including ‘the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.’ [Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)], 106 S.Ct. at 1438. Additionally, ‘[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the *817 context of an adversary proceeding before the trier of fact’ Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990). [The witness] did not give his deposition testimony in an adversarial proceeding, and his deposition provided proof not testified to by any other witness. We cannot say beyond a reasonable doubt that using [the witness’s] deposition as substantive evidence did not affect the jury’s finding Clark guilty. Introducing the deposition, therefore, constituted harmful, not harmless, error.”
614 So.2d at 454-455. In a footnote the court added: “If a deposition is used to supply relevant noncumulative evidence, it is unlikely that the harmless-error test can be met.” [emphasis supplied.] 614 So.2d at 455 n. 2.
Applying the same analysis to this case, we are unable to conclude beyond any reasonable doubt that the error was harmless.[4] The depositions here were clearly relevant, noncumulative evidence, evidence that was supplied by no other source. While we recognize that the presence of the fingerprint is powerful evidence, we cannot say from this record that the deposition testimony necessarily did not affect the verdict. This error was plainly harmful and therefore cannot be excused.
We caution lawyers against proceeding in pretrial discovery depositions in criminal cases in the absence of the defendant, at least where there is any prospect that the witness may be unavailable for trial. The importance of the right to confront witnesses suggests great risk in using depositions taken without the accused. One needlessly tempts the gods of reversal when they proceed without the defendant. As Clark demonstrates, one should not depend on appellate judges finding the error harmless.
We also note that the state is free to explore the possibility of using Harrell v. State, 709 So.2d 1364 (Fla.1998), in regard to the trial testimony of the two witnesses. In that case the supreme court held as a matter of first impression that the admission of trial testimony through the use of a live satellite transmission by a witness who resides in a foreign country and is not subject to compulsory process does not violate the federal or state constitution Confrontation Clauses. We have no way of knowing on this record whether the two witnesses are subject to compulsory process in this state and express no opinion as to whether Harrell authorizes the use of testimony through satellite transmission from a site within the United States. Nevertheless we do refer the parties to the following text from the court’s opinion in Harrell:
“Although [the lack of compulsory process for witnesses residing outside the United States] is an important consideration, it is not a mandatory prerequisite. In other words, we are not saying today that the satellite procedure can only be used for witnesses who reside outside of this state. We can envision situations where a witness in Tallahassee, who is unable to travel due to illness or disability, can testify via satellite in a courtroom in Miami. However, in every criminal case, there is a strong presumption in favor of face-to-face testimony. The burden would be on the moving party to provide substantial justification as to why a person who lives within the reach of the court’s subpoena power should not be required to be physically present to testify.”
709 So.2d at 1370 n. 6.
REVERSED.
STONE, C.J., and GROSS, J., concur.

. The state proffered evidence that the victims were in poor health and resided permanently in Connecticut; that they were both 90 years old at the time of trial; and that neither could endure the trip to Florida or the rigors of live, courtroom examination.

. By the time of trial, both the judge and defense counsel had been changed.

. The certified question in Clark was:
"In a case where the defendant's sixth amendment rights are violated by the improper admission of a discovery deposition in a criminal trial as substantive evidence, may the appellate court apply the harmless error doctrine as indicated in [Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and State v. DiGuilio, 491 So.2d 1129, 1134 (Fla. 1986)]?”
614 So.2d at 453.

. Because the error involves the constitutional right to confront witnesses, we have applied the harmless error test of State v. DiGuilio, 491 So.2d 1129 (Fla.1986), rather than section 924.051, Florida Statutes (1997). Under DiGui-lio the state has the burden to show beyond any reasonable doubt that the error did not affect the outcome. Under the statute defendant has the burden of showing prejudicial error — i.e., error that harmfully affected the verdict. We note that in Clark, which was admittedly decided before the adoption of the statute, the court applied the DiGuilio harmless error analysis because, as the court observed, of the relative importance of the Confrontation Clause in criminal trials to ensure the reliability of criminal trial evidence by subjecting it to rigorous testing in an adversary proceeding before a trier of fact.